UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LEEVAC SHIPBUILDERS L L C** | : | **DOCKET NO.  2:14-cv-00399** |
| **VS.** | : | **JUDGE MINALDI** |
| **WESTCHESTER SURPLUS LINES INSURANCE CO** | : | **MAGISTRATE JUDGE KAY** |

<u>**MEMORANDUM RULING**</u>

Before the court is a motion to compel discovery responses filed on October 8, 2014, by the plaintiff Leevac Shipbuilders, LLC (hereinafter "Leevac") requesting that the defendant, Westchester Surplus Lines Insurance Company (hereinafter "Westchester") be ordered to produce answers to interrogatories and documents originally requested by Leevac on July 16, 2014. In addition, Leevac seeks attorneys' fees and costs for bringing this Motion. For the reasons set forth below, the motion is hereby **GRANTED IN PART** and **DENIED IN PART.**

## I. FACTS & PROCEDURAL HISTORY

On July 16, 2014, Leevac served on Westchester its "First Set of Request for Admissions, Request for Production of Documents and Interrogatories." Specifically, the document contained eight requests for admissions, ten requests for production of documents, and fifteen interrogatories. *See* Doc. 22, att. 2. On August 5, 2014, Westchester, through counsel, requested a two-week extension of time to respond which Leevac granted. Doc. 22, att. 1, p. 2. On August 27, 2014, two days before the deadline to respond, Westchester again sought an extension. Leevac agreed to this second extension on the condition that Westchester submit a "meaningful counter-proposal" to an earlier settlement offer proposed by Leevac. Ultimately, through this

second extension, the deadline for Westchester's responses to discovery was extended to September 12, 2014. *Id*.

When the September 12 deadline arrived Westchester responded to the requests for admissions and to the requests for production by producing some 2,209 pages of documents which it claims were "the only files it maintained with respect to the subject loss and coverage." Doc. 28, p. 10.  A privilege log listing a single document as subject to the attorney-client privilege was also provided. Doc. 22, att. 6.  The interrogatories were apparently left unanswered due to the fact that counsel for Westchester's contact with the company was out of the country and hence could neither render the assistance nor grant the approval necessary to answer said interrogatories. Doc. 28, p. 11.

On September 24 Leevac sent a letter to counsel for Westchester identifying numerous deficiencies with the responses given and noting the latter's failure to respond to interrogatories. A Rule 37.1 teleconference followed on September 30, 2014, during which counsel for Leevac informed Westchester's counsel that she had waived the right to object to Interrogatories and that she should therefore submit her responses accordingly. Counsel for Westchester apparently indicated that the documents produced had been produced as kept in the usual course of business in full accordance with [FRCP] Rule 34.  She further stated that she would provide the "underwriting file" (Request for Production No. 3) subject to a Protective Order,[1] and also indicated that she would provide answers to the interrogatories by October 3, 2014. Doc. 28, p. 11.

---

[1] The protective order was issued by this court on October 21, 2014, and the file was apparently provided to the plaintiff shortly thereafter.

At some point shortly thereafter[2] Westchester provided Leevac with its answers to the interrogatories in question. As to interrogatory Nos. 1, 2, 3, 4, 5, 6, 7, 9, 12, 13, and 14, these answers consisted of statements indicating that Westchester would "supplement this response." *See* Doc. 22, att. 8.

As for interrogatory Nos. 8 and 15 Westchester responded with objections pertaining primarily to the relevance of the information sought thereby since both requested information about prior lawsuits allegedly unrelated to the instant litigation.

In response to interrogatory No. 10 which essentially requested a privilege log, Westchester reiterated that it had already provided such a document when it responded to the requests for production on September 12, 2014.

Finally, responding to interrogatory No. 11, which requested that Westchester "state the name, address, telephone number, and job title...of all persons who…investigated, reviewed, handled, made decisions, and communicated with Plaintiff regarding Plaintiffs claims," Westchester objected on grounds that said request was overly broad and unduly burdensome.

Upon receipt of these answers, Leevac filed the instant motion to compel on October 8, 2014, on grounds that "not one iota of information was disclosed" in the responses provided by Westchester. *See* Doc. 22, att. 8.

On or about October 27, 2014 Westchester finally provided Leevac with detailed and substantive responses supplementing its earlier replies both to the requests for production and to the interrogatories propounded. Each of these supplemental responses specifically responded to the queries raised by Leevac and gave appropriate identifiers (i.e. referencing Bates Nos.) as to

---

[2] Leevac claims Westchester's Answers to Interrogatories were not provided until October 6, Westchester maintains that they were provided on October 3 as indicated during the teleconference.

where the information sought could be located within the 2,209 pages of documents already produced. *See* Doc. 28, atts. 7-8.

Despite these responses, Leevac persists with the present motion claiming that the initial responses Westchester provided were little more than promises to supplement which are "tantamount to no answer at all," and that the supplemental responses Westchester has since provided are untimely because they were not produced until October 27, well over a month after the September 12 deadline agreed upon by the parties. Doc. 29, p. 3. Consequently, in addition to attorneys' fees and costs, Leevac requests the following from this court:

1. An Order, striking all objections to Interrogatories, and compelling Westchester to produce Supplemental Answers to Interrogatories, waiving all rights to objection;

2. An Order, striking all general, unsupported objections in Westchester's Responses to Requests for Production of Documents;

3. An Order, striking all unsupported claims of privilege, and requiring Westchester to clarify whether there are any documents being withheld on the basis of an alleged privilege, which are not listed in the Privilege Log, and/or any documents being withheld on the basis on other objections;

Furthermore, Leevac asks that we compel production of the following documents whether in Westchester's actual possession or practically obtainable by them if not so possessed:

1. Reinsurance file/documents;

2. Computer programs, electronic data, documents and/or manuals used by Westchester to evaluate/adjust Leevac's insurance claim;

3. Documents received by Westchester from any source retained by Westchester to investigate, inspect, or evaluate Leevac's insurance claim;

4. Records/documents relating to Plaintiff's property that were obtained or reviewed by Westchester in connection with Leevac's insurance claim;

5. Instructional materials and/or guidelines used to instruct Westchester claims adjusters regarding Louisiana law and/or company policy as to the standards to be met in adjusting insurance claims;

      6. Information relating to prior bad faith lawsuits against Westchester

Doc. 22, att.1, p. 4-5.

In opposition, Westchester contends that an order waiving all of its objections (even those related to privilege) is a drastic measure which should not be applied especially in this case where it is averred that counsel for Westchester acted in good faith throughout the discovery process. Furthermore, Westchester claims that it provided Leevac with a privilege log and all of the documents contained in the "claims file" related to the plaintiff's policy on September 12. The documents contained therein are purported to be all of the documents and information available to Westchester with respect to the plaintiff's policy, claim, and current lawsuit. *See* Doc. 28, pp.17-18. As before they maintain that information or documentation related to prior bad faith lawsuits against Westchester is wholly irrelevant to the instant suit, and production of said information would be unduly burdensome since any such documents available are not electronically searchable and would require "untold amounts of personnel time…and extraordinary expense" to search manually. *Id*. at p. 21.

## II. LAW & ANALYSIS

The party posing discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. Fed. R. Civ. Proc. 37(a) (2013). Materials and information are discoverable if they are non-privileged and "relevant to any party's claim or defense" or if they appear "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (2013). Furthermore, "the motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or persons failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. Proc. 37(a) (2013).

While the discovery process does have boundaries, *Hickman v. Taylor,* 329 U.S. 495, 507 (1947), the discovery rules are accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials. *Hebert v. Lando,* 441 U.S. 153, 176 (1979). Accordingly, it is well-established that the scope of discovery is within the sound discretion of the trial court. *Burns v Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir.1973).

    *A. Waiver of Objections and Privileges; Clarification of the privilege log*

It is clearly established that Westchester's supplemental responses were untimely since they were due on September 12, 2014 but were not provided until October 27, 2014. Accordingly, we recognize that our inquiry here is guided by Federal Rule of Civil Procedure 33(b)(4) which provides that "[t]he grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a *timely* objection is waived unless the court, for good cause, excuses the failure. Fed. R. Civ. P. 33 (emphasis added). Thus it is for us to determine whether "good cause" excuses Westchester's delay. In making that determination, we note that a court

> should look into the circumstances behind the failure to object…whether it was inadvertent, defiant, or part of a larger calculated strategy of noncompliance. The Court may also look at subsequent actions by the party to ascertain whether it was acting in good faith, as opposed to acting in a disinterested, obstructionist or bad faith manner. The court should always take into account any resulting prejudice or lack thereof, and the need to preserve the integrity of the rules by serving as a warning to other litigants. Finally, the Court may assess lesser sanctions should that be more appropriate.

*Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 526 (S.D.W. Va. 2007) (citing *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.,* 200 F.R.D. 255, 259 (M.D.N.C.2001)).

Here, we agree with Westchester that the waiver of all objections solely on grounds of untimeliness is indeed a drastic measure. Applying the factors above we cannot conclude that waiver is an appropriate sanction here. First, counsel for Westchester indicated that one of the reasons for the initial delay arose because she was unable to reach her client's representative who was out of the country. Doc. 28, p. 11. Additionally, responses were eventually given—twice. While we recognize that the initial responses were merely promises to supplement, both those and the actual supplemental responses themselves indicate to us a good faith effort on the part of Westchester to respond to Leevac's requests. Second, we cannot identify, nor has Leevac pointed out to us, any significant prejudice resulting from this delay. We therefore conclude that waiver of all objections and privileges is not an appropriate sanction under these circumstances.

As to Westchesater's single-page privilege log, the record indicates that Westchester provided that document well within the deadline contemplated by the parties, and on numerous occaisions Westchester has indicated to Leevac that it had nothing further to add thereto. We see no reason to doubt Westchester's claim in that regard, and will not issue an order requiring any further clarification than that already provided.

  B. *Reinsurance Files/Documents*

With respect to reinsurance files, we note Leevac's citation of *Imperial Trading Co. v. Travelers Property Cas. Co. of America*, No. CIV.A. 06-4262, 2009 WL 1247122 (E.D. La. May 5, 2009). In that case, the court held that both re-insurance agreements and any communications pertaining thereto are relevant and discoverable in cases in which a plaintiff seeks bad faith penalties against an insurance company under La. Rev. Stat. 22:658. Here, Leevac asserts claims under that same provision.

> Indeed, in every case brought to this Court's attention that specifically considered the relevance of reinsurance-related communications to the issue of bad faith, the

courts found that such communications are discoverable. *See, e.g., Fireman's Fund Ins. Co. v. Community Coffee Co., L.L.C.,* No. 06–2806, 2007 WL 647293, at *1 (E.D.La. Feb. 28, 2007); *Children's Hospital v. Continental Cas. Co.,* No. 06–3548, slip op. at 2 (E.D.La. Nov. 7, 2006); *U.S. Fire Ins. Co.,* 244 F.R.D. at 642–43; *National Union Fire Ins. Co.,* 116 F.R.D. at 82–83.

*Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, No. CIV.A. 06-4262, 2009 WL 1247122, at *4 (E.D. La. May 5, 2009).

We see no reason to break from such precedent. To the extent the re-insurance information has not already been provided, Westchester is hereby ordered to produce any files or documents in its possession evidencing any re-insurance agreement or communications related thereto provided such documents pertain to Leevac's policy or claim that is the subject of the present lawsuit. This information is to be provided within seven (7) days of the date of filing of this opinion unless review of this opinion is sought from the district court.

> C. *Computer programs, electronic data, documents and/or manuals used by Westchester to evaluate/adjust Leevac's insurance claim*

This information was earlier requested by Leevac in its "Request for Production No. 2." *See* Doc. 28, att. 7, pp. 5-7. Westchester responded to that request by stating that it had "produced its claims file and Plaintiff has been provided with all responsive documents concerning the calculation of Plaintff's claim in [Westchester's] possession," and "to the extent any such documents…[exist, they] would be contained in the claims file." Doc. 28, pp. 16-17. We find no reason to doubt Westchester's assertion and therefore Leevac's motion to compel this information is denied.

> D. *Documents received by Westchester from any source retained by Westchester to investigate, inspect, or evaluate Leevac's insurance claim*

Similarly, the information sought under this request also corresponds to information sought in Leevac's "Request for Production No. 2." Accordingly we find that Westchester's

production of the entire claims file with respect to Leevac's policy and claim was sufficiently responsive to "Request for Production No. 2." On numerous occasions Westchester has reiterated that it has produced all non-privileged documents in its custody relating to Leevac's claim. If the information sought by this request exists, it has already been produced.

> E. *Records/documents relating to Plaintiff's property that were obtained or reviewed by Westchester in connection with Leevac's insurance claim.*

Again, this request seeks information already requested in "Request for Production No. 2" and subsequently produced in the claims file noted above.

> F. *Instructional materials and/or guidelines used to instruct Westchester claims adjusters regarding Louisiana law and/or company policy as to the standards to be met in adjusting insurance claims.*

In requesting production of these "instructional materials" Leevac seeks the same information it had earlier requested in its "Reequest for Production No. 9." *See* Doc. 28, att. 7, p. 9. Westchester responded to that request stating that "there are no such documents responsive to this Request." *Id*. We find this answer sufficient. We cannot order the production of documents which do not exist.

> G. *Information relating to prior bad faith lawsuits against Westchester*

The information sought here corresponds to that previously requested in Leevac's interrogatory Nos. 8 and 15, and in its request for production Nos. 6 and 10. *See* Doc. 22, att. 2. Westchester contends that production of information relating to every prior bad faith lawsuit against it would be unduly burdensome. In support of that assertion, Westchester has submitted an affidavit by Anthony Hampton, Assistant Vice President of Claims Operations for ACE North American Claims.[3] Significantly, Mr. Hampton indicated that "[Westchester] does not have the

---

[3] Westchester Surplus Lines Insurance Company is a wholly-owned subsidiary of ACE US Holdings, Inc. *See* Doc. 9, p. 1.

ability to electronically search claims files or other records to identify the specific information [requested]." Specifically, he states that

> I have been able to determine that in the last ten (10) years, [Westchester] was presented with approximately 29,187 claims. The files vary in size from a few pages to thousands of documents. [Westchester] would have to manually go through all of these files. Many of the files are hard copy files located in off-site storage in various locations and would need to be retrieved…. I believe this would take hundreds, if not thousands, of personnel hours to conduct this type of analysis and even more to extract privileged documents.

Doc. 28, att. 9, p. 3.

In light of the evidence submitted we agree with Westchester. Such a request would be unduly burdensome and any potential relevance these documents might have is substantially outweighed by the extraordinary costs of producing them.

### H.  Attorneys' Fees and Costs

Under Federal Rule of Civil Procedure 37, "…if the disclosure or requested discovery is provided after [a motion to compel] was filed—the court must require the party…whose conduct necessitated the motion…to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).  However, the rule goes on to state that such payment must not be ordered if:

> ...
> **(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
> **(iii)** other circumstances make an award of expenses unjust.

*Id.*

We note first that the discovery requested by the instant motion was produced after its filing and which ordinarily would mitigate in favor of imposing reasonable costs and attorneys' fees.  As noted above, however, we find that the failure to timely respond was primarily due to the fact that counsel for Westchester was unable to establish meaningful contact with her client

for assistance and approval in answering the proposed interrogatories because the representative with whom she had been communicating was out of the country. Doc. 28, p. 11. Therefore, we find the delay "substantially justified" and hold that these circumstances together with the fact that Westchester acted in good faith throughout the discovery process render any award of expenses unjust. Accordingly, having found that the exceptions under Rule 37(a)(5)(A)(ii) and (iii) are met, we deny Leevac's request for attorneys' fees and costs on Westchester.

### III. CONCLUSION

For the reasons set forth above, Leevac's motion to compel discovery responses is hereby **GRANTED IN PART** and **DENIED IN PART.** Westchester is hereby ordered to produce any files or documents in its possession evidencing any re-insurance agreement or communications related thereto provided such documents pertain to Leevac's policy or claim that is the subject of the present lawsuit. This information is to be provided within seven (7) days of the date of filing of this opinion unless review of this opinion is sought from the district court.

THUS DONE AND SIGNED in Chambers this 15th day of January, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE